May it please the Court. My name is Christine LeBron-Dykeman and I represent the defendants in this case, West Worldwide and Sam West. As this Court is aware, this case relates to West's sale of R4 bias tires manufactured in China and that use a hockey stick tire tread design that's alleged to infringe the plaintiff's Outrigger brand tire. This appeal relates to the issuance of the preliminary injunction in joining my clients from using plaintiff's alleged trade secrets, trade dress, and any of the plaintiff's trademarks. We believe the District Court abused its discretion in granting this injunction for several reasons. First, there was insufficient record evidence to support a finding that plaintiffs would have a likelihood of success or even a fair chance of success on their trade secret and trade dress claims. Second, there was no record evidence to support a finding of irreparable harm as is now required under this Court's 2013 Herb Reid decision. And finally, regardless of the merits of either cause of action, we believe the Court erred in granting an overbroad injunction. First, with respect to the trade secret claim, the Court erred because the plaintiff's evidence fails to establish any of the essential elements necessary for a trade secret claim. With respect to the identification of the trade secrets, the plaintiffs failed to identify any trade secrets with specificity. They used broad terminology such as unique layout or phase level of construction or specific types of rubber, failing to identify, even under seal, what was unique about that layout or what was the phase level, what levels and phasing occurred or what were the steps there or what types of rubber. So they're just identifying things that are generally known in tire manufacturing that there are phase levels of construction, et cetera. This Court previously has held that those types of broad terminology without any precision are insufficient to identify trade secrets. And additionally, in Washington, there's a requirement of novelty and they produced no evidence with respect to novelty. Even more significantly, the plaintiffs failed to show that they took any reasonable steps to protect what they alleged to be trade secrets. The plaintiffs themselves had their tires manufactured in China through a company unrelated to themselves, a company by the name of SuperHawk. However, despite providing SuperHawk with all of the information necessary to make their claim, they were required to sign any confidentiality agreement until 2013. This is many, many months after the alleged infringement occurred. And indeed, the contract that was signed wasn't signed between SuperHawk and any of the named plaintiffs in this action. It was signed between SuperHawk and another entity, Solidio. And additionally, in fact, it didn't even relate to the tires that are at issue in this case, bias tires. We think most of the... The district court looked at that evidence, didn't it? There were declarations and the like. Sure. Yes, Your Honor. There was a declaration... You're saying there's clear error on the factual findings? I do. And the reason I say that, Your Honor, is the court looked at the declaration of Mr. Fleishauer indicated, the court said, well, Mr. Fleishauer says, well, there is that SuperHawk was an affiliate of a company that was related to... Was related to... The company was Lizao, who was the original contractor with Solidio. The problem is, is that contract, which is also part of the record, Your Honors, at excerpt of record, page 354, that contract, well, the whole contract makes no reference to the fact that the contracts bind any of Lizao's... And actually, more significantly, the contract states, the language there shows that they are not bound. At paragraph 2.8 of that contract, which the court references, the contract states that to any third parties and goes further to define third parties to include affiliates. So affiliates are not bound by that contract. And what is more, if SuperHawk were bound by that original contract in 2005, there would really be no reason for them to have had to sign an intervention agreement in 2013. So we believe the court erred in relying on that contractual language. And I thought OTR introduced evidence of a declaration indicating that it entered into confidentiality agreements with every party involved in the design and manufacture of the outrigger tire. And it also looks like they introduced evidence that the outrigger and extreme lift tires were almost identical, and the outrigger tire could not be copied without the confidential information. Yes, Your Honor. So the declaration itself says that language, but it says things like saying, for example, with respect to this paragraph 2, which is that except of record 347, that's where it indicates that it is bound because it is an affiliate. But the underlying agreement that is used to support that declaration shows just the opposite. So the court is relying on the affidavit testimony of a witness when the actual facts underlying it rely that same testimony. You want to address the irreparable injury? Absolutely, Your Honor. With respect to the irreparable harm, Your Honor, if I could just step back for one minute and I will address that in one second. The other thing is that although they indicate that they had contracts with everyone, there's actually, they don't reference the fact that they had contracts between themselves. And to date, we still don't know who the actual alleged owner of the trade secrets is. We have three parties, legally independent parties, and there's no contracts that are between themselves. All of these contracts could have been submitted to the court as part of the record for the preliminary injunction under seal, and they were not. Moving, jumping forward, Your Honor, to the irreparable harm injury, first there are two points that we have with respect to that. As an initial matter, they waited 18 months after first seeing my client's tires before filing this. And their allegation is that they waited those 18 months because they needed time to acquire the tire and then evaluate the tire to see if there was infringement, presumptively to comply with Rule 11. The problem is that they indicate that you can tell just by looking at the tires that they are trade dress infringement. That is their allegation. So they didn't need to wait 18 months for that. And with respect to trade secret misappropriation, they had two experts who testified by declaration. Neither of those experts made any identification or analysis with respect to the composition of the tire. So the court effectively presumed that because the tires look alike, they must be made the same. I mean, if you look at tires just walking around the street, they all look relatively similar but they might have different makeups. The plaintiffs never offered any evidence to suggest that those tires were actually made of any of the same materials or the same method of manufacturing. That is in quite my recollection, didn't OTRS submit some declarations that the manufacturer in China had manufactured tires for it and also for West? Absolutely. The same manufacturer manufactured the tires but there is no evidence that those tires were made the same. Wasn't and didn't OTRS say or show in their declarations that the process by which the tires were made for it was based on confidential information which it had given to the tire manufacturer? Yes, Your Honor. By their declarations... So the same person did it and did it on the information given by OTR. Isn't it reasonable to conclude that information is used by Super Hawk in manufacturing for West? No, Your Honor. I don't think it is because they could have, they had that 18-month timeframe to find out in fact if they were, if there were anything that were the same about the tire composition and they did not. They have no evidence. All they say, all they know is that the same manufacturer manufactures both tires. So manufacturer using information which was supplied by OTR to manufacture process and recipe. The... What they didn't do, and you're quite right, is to take a hunk out of the West tire and see whether its composition was chemically the same as the OTR tires. Yes, Your Honor. What they know is that Super Hawk made tires, made the OTR tire using their specifications. And then they're making a presumption that the tires made for West were the same composition. And in fact, there's testimony from Super Hawk, from Michael Zhang, that indicates they were not. Assume you lose on that. You want to come back to irreparable harm? Absolutely. So with respect to irreparable harm, so one, they waited the 18 months, but even more importantly, under Herb Breed, there needs to be something more than that presumption. We used to, in trademark law, say if you have, if you show a likelihood of confusion, the harm is presumed. That's no more the case under eBay and under Herb Breed from this court. And in this case, the court's decision for why it concluded that there was irreparable harm was based on the language of a hypothetical. He says, open quote, if the tire was not the result of trade secret misappropriation, there's a question as to its quality as compared to plaintiffs. And if the quality is not the same, plaintiffs' reputation may be damaged, and as customers may well blame plaintiffs. Simply put, if plus if plus may plus may equals speculation. It is not concrete evidence of harm. I'm not reading the rest of the paragraph. He's talking about a hypothetical, I agree to that, as to reputation. But there's another element of irreparable injury which he talks about. What's that? The other information that he references, Your Honor, is with respect to the fact that as part of this preliminary injunction motion, not as part of an infringement situation, but part of this preliminary injunction, my client submitted evidence that said that we received the designs for this tire from our client, Jeannie. They also had Jeannie as a client. They went to Jeannie and basically confronted Jeannie. The other element besides reputational damage, which is goodwill, goodwill. And he makes a claiming that as a result of West manufacturing a tire, OTR was required in its litigation to go to Jeannie and cross-examine them about whether they had leaked the information to West, which was a damage to the goodwill existing between OTR and Jeannie. That's the second part of his finding, right? Now, what's wrong with that? What's wrong with that, Your Honor, is that had nothing to do with the alleged use of the tire. That had to do with my client presenting evidence in the context. On a but-for analysis, had West not manufactured the tire, it would not have been necessary for OTR to go to Jeannie to ask the questions that it did. That had to do with the manufacture of the tire. It didn't have to do simply with an approximate cause, which was a litigation. But in a but-for analysis, the causation element is there, is it not? I would disagree, Your Honor, because the only reason was because my client had documentary evidence that said that they had received the specifications from Jeannie, information which in and of itself said that this was Jeannie's proprietary information. And where did Jeannie have it? Well, the document that we have indicates that it's Jeannie's proprietary information. If they, I presume they probably got it from outside. Well, of course, because Jeannie doesn't manufacture the tire, it sells the tire. Right, but it has specifications that it wants. What evidence would OTR have had to introduce to show a likelihood of irreparable harm, in your view? I think they would have to show that they had actually had an injury preceding the filing of this complaint. If they had had to go to Jeannie and had it shown some sort of goodwill and reputational injury as a result of their relationship with Jeannie prior to the filing of this complaint, then I think that may have been sufficient. In this case, this all occurred after the filing of the complaint. So you're saying you can't get irreparable injury if the nature of the infringement is such that it's self-evident that the reputation and goodwill of the company has to be established before you bring the lawsuit? Absolutely. For a trademark infringement, the reputation, especially when we're dealing with marks that are registered, a mark that is registered as on the supplemental registry, you need to show that secondary meaning or that reputation prior to the filing of the lawsuit. Well, no, I'm, okay, I just want to, you're saying that if I have met those steps, but I haven't shown that I've yet actually been injured, even if the infringer is a fly-by-night that is going to put out substandard kind of product that's identical to mine, you're saying that the law precludes a reputation ground for a preliminary injunction because they haven't suffered the injury already? I think they have to prove that there is an actual injury, Your Honor, not that there is a prospective or speculative injury that may occur in the future. Can you cite a case that says exactly that? I think that's the Herb Reed decision. I think it is, it indicates that it must be subsequent, and it has to be actual injury, and we no longer have that presumption in place. Your Honor, as I see, my time is almost up. I did want to mention briefly with respect to the injunction itself, the court made two errors with respect to that. First, it enjoined all of plaintiff's marks, which includes the outrigger mark, which plaintiff's counsel indicated at the hearing was not an issue in the case, actually, because they have no evidence my client used it, which prohibits them from using even legitimate comparative advertising. And additionally, because they haven't identified trade secrets with specificity, my client's left to wonder what on earth they can possibly make with respect to attire at all, because we don't know what they claim to actually be their trade secrets. Thank you very much. If it pleases the Court, Joss Weatherhead of Lee and Hayes for the plaintiffs and appellees. I think you'd be wise to address the irreparable harm issue and tell us why you can't be made whole simply by damages. Certainly, Your Honor. I guess I would want to start by saying, you know, the appellants criticized the lower court for having engaged in futurism, which they call speculation, about the likelihood of future harm. And I guess my first comment about that is that the extraordinary remedy of an injunction is to forestall future harm that hasn't happened yet. So by definition, you're always engaged in futurism. You are engaged in predictions about what's likely to occur or under the Greenpeace test whether a serious question is raised and the equities tip sharply in favor of the plaintiff. The Court states at page 8, line 5 of its decision, and a legitimate question arises whether that tire is of the same quality as the plaintiff's tire. For a legitimate question to arise, we need evidence. Where is the evidence that the West tire was any different in quality from the OTR tire? Because it cuts against you if you say that there is evidence that it was different because part of your claim is a trade secret claim, which you say is the recipe which they stole. So if they stole the recipe, it would be reasonable to conclude they used the recipe. And if they used the recipe, there would not be a difference in the quality of the plaintiff's tire. That's right, Your Honor. And I'll say we didn't offer any evidence that the tire was different. And why? You had the tire. All you had to do was to take a chunk out of it and say one of two things. One, it's our recipe and the trade secret is violated. Or two, it's not our recipe and the quality is terrible. To date, we don't have the kind of study of the tire that the court refers to. And I'll point out that in the declarations. You don't have it, but is it impossible? We're trying, Your Honor. Is this DNA not discovered yet? We're trying. But the record does show you in the declarations of Mr. Smith and Mr. Taylor and I think also Mr. Romero, although I'm not so sure about that. But Mr. Smith certainly says it's really hard to reverse engineer these tires because they undergo organic changes when they're submitted to the vulcanization process. And so there are some things that you can tell right away, but other things that it's very difficult to do by reverse engineering. The record does tell you that. And so certainly by the time we get to trial, we're going to have a go at reverse engineering a West tire and seeing if we can prove conclusively. But I will tell the court that we did not offer any evidence that the quality of the tires being produced by West is lesser than the quality of the tires that were produced by the same factory out of the same molds using the same components for us. That is not part of our case. Well, when you get this legitimate question arises, there isn't any evidence that a legitimate question arises, and the judge will just rule on that, right? The court was saying that if it's true, as West contends, that they are not using our method to produce this tire and our components, then a legitimate question arises as to whether it's of the same quality. Why? Because it isn't the same tire, but it's being marketed in the marketplace as though it were our tire. But the evidence that we offered as to irreparable harm, Your Honor, was, number one, loss of control of our mark. If we don't get – if you can't go into a courthouse and ask a court to enjoin the use of your registered trade dress, which tells the marketplace that this tire is your product and which you otherwise have the right to decide which products to put it on and which products not to put it on, that loss of control is itself an irreparable harm. Secondly, the threatened loss of goodwill in the marketplace, the idea that you can't go out and sell as the owner of this mark to your customers, that somebody else can sell your goods to those customers, that loss of goodwill is expressly recognized in the Herb Reid decision as a basis for finding of irreparable harm. Quoting from Herb Reid, evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm. Could. Could. And in this case – So where's the proof? Mr. Taylor says, I've lost control of my mark if they're permitted to continue to sell this tire. That's true of anybody. I mean, so where's the proof that it would happen that way? Herb Reid says, yes, you could do it, but there's no proof in Herb Reid. So we don't know how you're going to do it. In this case – Go back. Now, where's the proof in this case? The evidence in this case was that they took our largest customer and began selling our goods to that customer. Right. And you go sue them and you get damages for misappropriation, right? Correct. Okay. And that's a remediable monetary relief. The lost profits are, Your Honor, but not the loss of control of the mark, not the loss of goodwill with that customer. What's the loss of control of the mark in this case? That they took our mark and were selling it to our customers whose customers down the chain are understanding that they're buying our product when they're not. So the customer confusion is enough now? I think it is, Your Honor. That's not what Herb Reid says. Herb Reid says that evidence of loss of goodwill and evidence of loss of control of the mark are enough. Merely showing infringement is not enough. So we're no longer in the day when, having proved infringement, we're entitled to an injunction. We had to go something more. The something more that was the evidence of Mr. Taylor, I've now lost goodwill with my customer. I've had my relationship with my customer injured insofar as I've had to brace up my customer and ask him, did you collude with a competitor to give them my trade dress and my trade secrets? That injured that relationship. And Judge Succo definitely focused on that fact. And Mr. Taylor. What has the injunction got to do with it? With that, how does it remedy talking to witnesses? If you're litigating over this alleged misappropriation, then you're going to obviously be talking to witnesses. And you're saying just the fact that now you've talked to one of your customers, they've talked to one of their customers and you've had to go asking these questions, that that's enough for an injunction? Yes. Because it enjoins him from using our mark to talk to that customer and any other customer in the marketplace. And when we're not talking about merely threatened behavior, so that from a retrospective perspective, to the extent that lost profits have occurred, we can sue and we can recover those. But to the extent that there would be future interference with our goodwill and future interference with our customers, that proof suffices to justify an injunction. It's an act of selling to them. Yes, Your Honor. Okay. So. Even if they weren't confused. Yes, Your Honor. There has to be confusion. And I'll just note that issue has not been raised in this appeal. There isn't any dispute about likelihood of confusion in this appeal. Well, Jeanne, did they know that they were getting a non-OTR tire? They must have done. And so are you asking is there no evidence of possibility of confusion? There was. Jeanne sent purchase orders to OTR asking it to deliver tires by an unfamiliar part number, and there's a declaration of Mr. McFadden in the file explaining how he had to go figure out, oh, they're asking for Wes's tire, but they ask us for it. So there is concrete evidence of confusion by Jeanne. But the law associated with confusion, and I want to say one more time, that's not in this appeal. They didn't appeal that aspect of the district court's ruling. No, I'm just trying to understand the you're fleshing out of goodwill so that if Jeanne knowingly bought from a competitor and wasn't confused and then you had to go talk to them to say, did you know you were getting a tire based on our trade secrets, that that's a loss of goodwill that supports a preliminary injunction? I think the, yes, from a larger perspective, the interference with the relationship on the basis of a violation of trade secret and trade dress rights is remediable. It has to be. What's your best case for saying that that constitutes loss of goodwill? Herb Reed. Interference with the relationship with the customer. Herb Reed is where I would go for that as a variation on loss of goodwill. It does say there's loss of goodwill, but it doesn't say what constitutes loss of goodwill. That's what I'm trying to pin you down. So you don't have a case other than, so we would have to say, if we were to agree with you, we would have to create the rule that if someone's misappropriation causes them to deal with your client, current customer, and because they're pricing lower, they now interrupt or interfere with your longstanding relationship with that customer, that's a loss of goodwill. I say it is, but I don't say that that's the holding you have to make. There is a case. We cited it to the district court, and I believe the district court cited it, if I'm not mistaken. But standing here, I can't dial it up. But there is a specific case, as I recall, that talks about damaging the relationship with the customer. I think the district court cited a case. If I'm wrong, then I'm wrong. But it seems to me that we did have specific authority for the idea that injuring the relationship with the customer by us having to go there and raise these issues with it is itself proof of harm to a future harm. And why can't that damage be addressed by legal damages? Because it's not calculable. You know, at some point, you can prove your losses in damages, but the whole concept of irreparable harm is that equity steps in when you start getting future harms that may not be calculable by you. Can I ask you about these confidentiality agreements? Does OTR enter into confidentiality agreements with every party involved in the manufacture and design of the outrigger tire? And, you know, why weren't these agreements submitted in the record for the district court? Your Honor, Fred Taylor in his declaration says that every member of Blackstone OTR signs strict confidentiality agreements. Can I represent to you that there is an express written agreement between FBT, which is a limited liability company owned by Mr. Taylor, and OTR? I can't say that. That's not an issue that sort of bubbled up in the district court. If it had, we would have, in reply, figured out the answer and supplied it. What Mr. Taylor does say is generally, in his declaration, he says, we have strict confidentiality agreements with everybody associated with the engineering and manufacture of the tire. So from that, I infer that there are agreements across all the plaintiff organizations. Have I seen them? I haven't. This issue wasn't raised to the district court in response as one of particular significance below. And the reason is, even if there isn't a written agreement between Mr. Taylor, qua sole member of FBT, LLC, and 51% member of Blackstone OTR, that doesn't mean there is a lack of a confidentiality understanding between himself and himself, if you will, among those two entities. And there's no suggestion that any trade secrets ever leaked into the marketplace from between Blackstone OTR, FBT, and OTR Wheel Engineering, the related companies. The only suggestion that Mr. West and his companies make in relation to leaking information to the marketplace is, they say, one of your molds was auctioned off. And the record shows you that, in fact, one of OTR's outrigger molds was in the possession of a company called, I think, Galaxy, that went bankrupt. The trustee in bankruptcy sold the molds to a company called Alliance. And the record shows you that the plaintiffs, in this case, brought suit against Alliance to enforce the rights that they had had with Galaxy. You have little time left, sir. Would you discuss the point made by Mr. Brown-Deichmann, which is that the injunction as it stands is overbroad? Do you agree with that? No. As I understand their overbreadth contention, it's, number one, that the court shouldn't have enjoined the use of the word mark outrigger. And the court did enjoin the use of the word mark outrigger, even though that word doesn't appear on the infringing tires. But it seems to me that where we have shown an infringement of registered trade address, it's not an overreach by the district court to say I'm going to protect all of their marks from abuse by this defendant. Second point they make is they say he ordered them not to use the trade secrets. And they say, gee, we don't have any meaningful way to figure out what those trade secrets are. Respectfully, the way you figure out if you're using trade secrets when you're dealing with the third-party manufacturers, ask them, I would like you to make a tire for me. Are you subject to any agreements that make any part of your process a trade secret that belongs to anybody else? And certainly we're not going to ask for a contempt finding if Mr. West or his companies can produce a tire from a third party who has told them we are not subject to any agreements, you know, putting confidentiality on any of our processes in relation to OTR. I see my time is up, and so unless the court has any further questions. Thank you very much. Thank you, Your Honor. You exhausted your time, Ms. LeBron-Dackman, but we'll give you a minute for rebuttal. Thank you, Your Honor. Just a few quick points. First, with respect to the loss of goodwill, the plaintiffs indicate that they are, that we are, my client is selling tires that people believe to be theirs. They're neglecting the fact that both tires, very specifically on the sidewall of the tire, have the brand of the tire. Theirs says Outrigger, ours says Extreme Lift, which is very clear to the purchasers what the tire is. In addition, for their claim with respect to the fact that they are on the same issue of goodwill, they failed to at any point mark their tires, their manuals, their website, anything with an R in a circle, or in any way indicate that they owned this trade dress that they contend is so significant to them. Finally, with respect to the trade secrets being disclosed to the public, by disclosing them to third-party manufacturers in China who are not subject to any agreements, we believe that those were obviously put into the public domain. Thank you, Your Honor. Thank you. Thank you both for a very interesting and good presentation of your positions in the case of OTR Wheel Engineering and West 401 Services is submitted. And that takes us to the end of our calendar for the day, and we will be adjourned until 9 o'clock tomorrow morning. Thank you very much. Hear ye, hear ye. All those having had business with the Honorable Justice of the United States Court of Appeals for the Ninth Circuit will now depart. For this Court, for this session, now stands adjourned. Thank you. Thank you.
judges: Fisher, Bea, Murguia